Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
Telephone: (208) 724-2617
Facsimile: (208) 906-8663
chd@fergusondurham.com
ISB No. 6428

Attorney for Petitioner

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADAM DAVID BODENBACH,<br><br>                    Petitioner,<br><br>    v.<br><br>RANDY VALLEY,<br><br>                    Respondent. | Case No.   1:23-cv-00303<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**28 U.S.C. § 2254** |

Adam David Bodenbach alleges that the state of Idaho is holding him in violation of the United States Constitution. He seeks a writ of habeas corpus directing Respondent to release or retry him within a reasonable time.

## JURISDICTION

1.      The Court has jurisdiction under Art. I, sec. 9, cl. 2 of the United States

Constitution, 28 U.S.C. § 2241, and 28 U.S.C. § 2254.

## PARTIES

2.      Idaho state prisoner Adam Bodenbach resides at the Idaho State

Correctional Center under a November 17, 2017 Judgment of Conviction and

Commitment, in which Honorable Steven Hippler sentenced him to life in prison with

25 years fixed for first-degree murder. Exhibit A.

3.      Respondent Randy Valley is the Warden at the Idaho State Correctional

Center.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### Trial Proceedings

4.      On January 6, 2017, the State charged Mr. Bodenbach with first-degree

murder for the death of Ryan Banks.

5.      The charge stemmed from an incident that winter night at the Park Village

apartments in Boise, where Mr. Bodenbach and Mr. Banks got into an altercation. Mr.

Bodenbach had been using cocaine that night.

---

[1] These factual allegations are based primarily on the state court record, which
Respondent has an obligation to provide to the Court once he is ordered to respond to
the Petition.

6.      After the brief fight, Mr. Banks left with another friend, Jacob Kimsey, and went to a separate apartment in the same complex. Mr. Bodenbach later armed himself and went to that apartment. *See State v. Bodenbach*, 448 P.3d 1005, 1009-1010 (Idaho 2019) (*Bodenbach I*).

7.      There were different versions of what happened next – with the State claiming a premeditated homicide and Mr. Bodenbach claiming self-defense – but it was undisputed that Mr. Bodenbach shot Mr. Banks once while they were in the doorway area of the apartment. *Bodenbach I*, 448 P.3d at 1010. Mr. Bodenbach claimed that he then took a large quantity of Xanax to calm his nerves before he was arrested.

8.      The state court initially appointed the public defender to represent Mr. Bodenbach.

9.      After a preliminary hearing, the magistrate judge bound him over to face charges in the district court for first-degree murder, use of a firearm, and possession of a controlled substance.

10.     Mr. Bodenbach retained Douglas Nelson as his trial counsel.

11.     Before trial, the State presented a plea offer to Mr. Bodenbach. If he agreed to plead guilty to second-degree murder, the State would recommend no more than 15 years fixed with life indeterminate.

12.     Nelson told Mr. Bodenbach to reject it because they had such a strong case of self-defense. Nelson told him that he would be "surfing by Christmas."

13.     Nelson filed a motion to suppress Mr. Bodenbach's statements to law enforcement officers based on a claim that Mr. Bodenbach was under the influence of drugs and unable to meaningfully and voluntarily waive his rights.

14.     At the suppression hearing, the State presented the testimony of a toxicologist to cast doubt on Mr. Bodenbach's claim of drug intoxication.

15.     Nelson did not consult with or present the testimony of a defense expert to counter that narrative.

16.     The district court ultimately denied the motion to suppress.

17.     The case proceeded to a jury trial.

18.     After both the State had rested and the defense had presented its case in chief – without Mr. Bodenbach testifying – District Judge Steven Hippler notified the parties that he was considering giving a jury instruction that Mr. Bodenbach could not claim self-defense if he had instigated the threat, a kind of "initial aggressor" instruction.

19.     The Idaho pattern criminal jury instructions did not contain an initial aggressor instruction.

20.     Judge Hippler decided to give such an instruction, however, over trial counsel Nelson's generalized objection. He drafted his own.

21.     Because of the court's late decision, it allowed the defense to reopen its case.

22.     Mr. Bodenbach then testified. He claimed that he shot Ryan Banks only after Banks had rushed at him with a knife. The jury had heard evidence that Mr. Banks owned knives, and Mr. Bodenbach gave one to the police that he found near the apartment that night.

23.     The jury returned a guilty verdict.

24.     The district court imposed a sentence on Mr. Bodenbach of life in prison with the first 25 years fixed.

25.     He appealed to the Idaho Supreme Court.

### Direct Appeal

26.     On appeal with new counsel, Mr. Bodenbach claimed that the trial court had erred in giving the initial aggressor instruction arguing, in part, that it lowered the State's burden, in violation of the Fourteenth Amendment, to prove that the killing was unlawful. He further argued that the trial court erred in denying the motion to suppress and that it had abused its discretion in sentencing Mr. Bodenbach to life with 25 years fixed before he was parole eligible.

27.     The Idaho Supreme Court affirmed.

28.     Although the Idaho Supreme Court found that the trial court's initial aggressor instruction was "not without problems," it did not rise to fundamental error. *Bodenbach I*, 448 P.3d at 1015.

29.     In the course of making that determination, the court held that "the erroneous language in the instruction would have reduced the State's burden of proving the 'unlawful' element for a murder conviction," but that under Idaho's fundamental error review, "Bodenbach failed to establish that the error actually affected the outcome of the trial." *Id*. at 1016.

30.     The Idaho Supreme Court likewise affirmed the trial court's decision on the motion to suppress and upheld the sentence. *Id*. at 1020.

31.     The remittitur was issued on September 25, 2019.

**Post-Conviction Proceedings in the District Court**

32.     On September 22, 2020, Mr. Bodenbach filed a petition for post-conviction relief in the state district court.

33.     He raised five claims of ineffective assistance of trial counsel and one claim of cumulative error.

34.     Mr. Bodenbach alleged that he was deprived of his Sixth Amendment right to the effective assistance of counsel because his trial counsel failed to object to the trial court's erroneous initial aggressor instruction; failed to request an "imperfect self-defense" instruction; failed to consult with a toxicologist or pharmacologist; gave unreasonable advice to reject a plea offer; failed to object to multiple instances of prosecutorial misconduct during closing argument; and failed to develop mitigating mental health evidence at sentencing to counter the State's narrative.

6

35.     Mr. Bodenbach further alleged that even if any one of the claims was not sufficiently prejudicial, his counsel's errors combined violated his right to due process of law.

36.     He provided an affidavit in support of his claims and moved for the appointment of counsel. In his petition, he requested leave to conduct discovery, funds for an expert, and an evidentiary hearing.

37.     The district court appointed the Ada County Public Defender to represent Mr. Bodenbach.

38.     Attorney David Lorello from that office was assigned.

39.     Aside from a couple of notices of non-objection to routine State motions, and a motion to release the PSI, Lorello filed nothing on Bodenbach's behalf.

40.     Lorello did nothing to develop Bodenbach's claims in state court.

41.     He completed no investigation.

42.     He did not seek discovery.

43.     He did not file an amended petition.

44.     The district court eventually issued a notice that it intended to summarily dismiss the petition, concluding that the grounds stated in the petition do not give rise to a claim of post-conviction relief.

45.     Lorello ignored the notice of intent to dismiss.

46.     The district court thereafter dismissed the petition and entered judgment.

47.     Lorello filed a notice of appeal, and the State Appellate Public Defender was appointed.

## Post-Conviction Appeal

48.     On appeal, Mr. Bodenbach's counsel argued that the district court erred in summarily dismissing a claim of ineffective assistance of counsel based on trial counsel's failure to consult a toxicologist regarding Bodenbach's consumption of cocaine and Xanax. *Bodenbach v. State*,  2022 WL 17101456, *3 (Ct. App. 2022).

49.     The Idaho Court of Appeals affirmed the district court.

50.     Mr. Bodenbach next submitted a petition for review in the Idaho Supreme Court, which was denied.

51.     The remittitur was issued on March 27, 2023. Exhibit C.

52.     Mr. Bodenbach files this petition within one year of the date that his judgment became final by the conclusion of direct review, which has been tolled by the time in which the post-conviction matter was pending. 28 U.S.C. § 2244(d)(1)(A),(d)(2).[2]

---

[2] The remittitur was issued on Bodenbach's direct appeal on September 25, 2019. Exhibit B. Finality for purposes of a direct appeal includes the 90 days to file a petition for writ of certiorari in the Supreme Court. *Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir.1999).

   The limitations period was then tolled when Bodenbach filed his petition for post-conviction relief on September 22, 2020, with 92 days of the statute of limitation remaining. It started to run again when the remittitur was issued in the post-conviction appeal on March 27, 2023. Bodenbach has filed this petition within 92 days of that date, on June 26, 2023.

## CLAIMS FOR RELIEF

### I.

**Mr. Bodenbach was deprived of his Fourteenth Amendment right to due process of law because the trial court's initial aggressor instruction lessened the State's burden of proof on an essential element of the crime beyond a reasonable doubt.**

53.    To convict a defendant of murder under Idaho law, the State must prove that the killing was "unlawful." Idaho Code § 18-4001.

54.    This is an essential element of the crime.

55.    Under Idaho law, a killing is lawful if the defendant was acting in self-defense, as it is defined by statute.

56.    The Due Process Clause of the Fourteenth Amendment protects Mr. Bodenbach's right to be convicted only on proof of each essential element beyond a reasonable doubt.

57.    The State was therefore required to prove, beyond a reasonable doubt, that Mr. Bodenbach did *not* act in lawful self-defense.

58.    Here, the trial court's initial aggressor instruction lessened the State's burden of proof on that essential element of the crime.

59.    Among other problems with the confusing and verbose instruction, the court informed the jury that "the circumstances justifying a killing must be such as to render it unavoidable."

60.     There is no requirement under Idaho law for a killing to be "unavoidable" before one can use force to defend themselves.

61.     The Idaho Supreme Court agreed and concluded that the trial court's initial aggressor instruction was erroneous on this point. *Bodenbach I*, 448 P.3d at 1015.

62.     It further concluded that "the erroneous language in the instruction would have reduced the State's burden of proving the 'unlawful' element for a murder conviction. *Id*.

63.     Yet, it declined to reverse the conviction because under its "fundamental error review," the court concluded that Mr. Bodenbach had "failed to establish that the error actually affected the outcome of the trial." *Id*. at 1016.

64.     The trial court's instructions deprived Mr. Bodenbach of his right to due process of law under the Fourteenth Amendment.

65.     If this claim is subject to the standards in the Antiterrorism and Effective Death Penalty Act (AEDPA), the state court's adjudication was contrary to or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). It was also based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2).

66.     The error was not harmless.

## II.

**Mr. Bodenbach was deprived of his Sixth Amendment right to the effective assistance of counsel when his trial counsel failed to object with specificity to the court's initial aggressor instruction.**

67.     Mr. Bodenbach had a right to the effective assistance of counsel under the Sixth Amendment, incorporated by the Fourteenth Amendment.

68.     A defendant has been deprived of that right when his trial counsel's performance (1) fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome would have been different.

69.     Mr. Bodenbach's trial counsel objected initially to the trial court's decision to give an initial aggressor instruction, but he did not object with specificity when the trial court proposed the language of the instruction.

70.     Trial counsel provided ineffective assistance in not objecting to the incorrect portions of the district court's initial aggressor instruction.

71.     It was unreasonable for counsel not to object to these errors.

72.     The Idaho Supreme Court has already determined that he had no "tactical" reason for failing to object to the "unavoidable" language. *Bodenbach I*, 448 P.3d at 1015.

73.     The error was also prejudicial for either one of two reasons.

74.     First, had counsel objected, and had the district court streamlined the instruction and removed the requirement that "the circumstances justifying a killing must be such as to render it unavoidable," there would be a reasonable probability of a different outcome.

75.     This was not a whodunit. Whether Mr. Bodenbach acted in lawful self-defense was the issue in the case.

76.     There were competing versions of the events for the jury; the State's theory and Mr. Bodenbach's testimony that Mr. Banks came at him with a knife.

77.     Some evidence corroborated Mr. Bodenbach's version, including testimony that Mr. Banks had a knife collection, and the discovery of a knife after the shooting.

78.     Jacob Kimsey, the only witness other than Mr. Bodenbach to testify, had his own reasons to shade his testimony in the State's direction. He was not a disinterested witness.

79.     Regardless, given the trial court's instruction, the jury could have found that the killing was "avoidable" simply because Mr. Bodenbach went over to the apartment with a firearm, *even if it believed that Mr. Banks rushed him once he was there*.

80.     This erroneous portion of the instruction was at the very beginning. Once the jury found that the killing was not "unavoidable," then it needed to go no further into the instruction.

81.     Second, had counsel objected and the district court did not correct the instruction, the issue would have been preserved for appellate review.

82.     As it was, Mr. Bodenbach was forced to satisfy the most onerous appellate review standard – fundamental error review.

83.     If counsel had objected, the State would be required to prove beyond a reasonable doubt that the error did not affect the outcome.

84.     The State would not have been able to carry that burden. There was ample reasonable doubt. The jury could have found all other aspects of self-defense warranted but concluded that the killing was "avoidable" under the trial court's instruction for many reasons, including something as simple as that Mr. Bodenbach went over to the other apartment before the fatal conflict.

85.     If this claim is subject to AEDPA standards, the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). It was also based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2).

86.     The error was not harmless.

## III.

**Mr. Bodenbach was deprived of his Sixth Amendment right to the effective assistance of counsel because his trial court failed to request a jury instruction on "imperfect self-defense," which mitigates murder to voluntary manslaughter when a defendant acts on an unreasonable but honest belief that self-defense was necessary.**

87.     Trial counsel failed to identify the correct standard of law and subsequently request for the jury to be properly instructed on the doctrine of imperfect self-defense.

88.     Under this doctrine, when a jury finds that a defendant killed another person because the defendant actually, but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter.  *See, e.g.*, *People v. Rangel*, 367 P.3d 649 (2016).

89.     The circumstances of this case provide good grounds for the fact finder to conclude that the prosecution failed to prove the necessary element of malice that distinguishes murder from manslaughter because of imperfect self-defense.

90.     Trial counsel defended the case on the basis that Mr. Bodenbach acted in self-defense. An "imperfect" self-defense instruction would have complemented that defense like a hand in glove, particularly because of the danger that the jury would find

that Mr. Bodenbach's state of mind was altered to the extent that the risk he perceived was sincere and honest but objectively unreasonable.

91.     Trial counsel's failure to request the instruction was not the result of a reasonable tactical or strategic judgment.

92.     This was a case where three young men had been using drinking, using drugs, and had just had a serious fight over something insignificant, where Mr. Banks choked Mr. Bodenbach in his apartment to a state of near unconsciousness. Everyone was running hot.

93.     Even if the jury believed that Mr. Bodenbach's use of force was unreasonable, the jury could have still easily found that he sincerely believed he needed to use deadly force given his heightened, paranoid, and heated state of mind.

94.     As it stood, the jury had no option for this middle ground.

95.     While there is no imperfect self-defense instruction in the Idaho Criminal Jury Instructions, the structure of Idaho's murder and manslaughter law supports the defense. *See, e.g.*, *State v. Johns*, 112 Idaho 873, 880, 736 P.2d 1327, 1334 (1987) (assuming the defense exists and framing the issue as whether "there was substantial evidence at trial to support either Johns' absolute self-defense or imperfect self-defense claims, and the evidence at trial was not sufficient to support a finding of murder").

96.     The defense exists under Idaho law because Idaho's statutory framework separates voluntary manslaughter from murder by the absence of malice.

15

97.     Idaho's statutory murder/manslaughter scheme is nearly identical to California's, where the defense has existed for years. *E.g.*, *Rangel*, 367 P.3d 649 (2016).

98.     A zealous advocate, acting reasonably on these facts, would have recognized the need for such an instruction.

99.     Trial counsel's failure to request one fell below an objective standard of reasonableness. Any defense attorney confronted with these facts, acting reasonably, would have requested the instruction.

100.     This is particularly true after the trial court injected the "initial aggressor" instruction into the case.

101.     Mr. Bodenbach was prejudiced because, had the instruction been given, there is a reasonable probability that the jury would have found that his beliefs were unreasonable due to his state of mind but that they were honest.

102.     If this claim is subject to AEDPA standards, the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). It was also based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2).

103.     The error was not harmless.

## IV.

**Mr. Bodenbach was deprived of his Sixth Amendment right to the effective assistance of counsel because his trial counsel failed to consult a toxicologist or pharmacologist and failed to present the testimony of such an expert.**

104.    There was evidence in this case that Mr. Bodenbach has ingested cocaine the before the shooting and, he claimed, that he then took Xanax after the shooting.

105.    The State offered a toxicological expert, Dr. Gary Dawson, both at a pretrial suppression hearing and again in rebuttal at trial.

106.    Dr. Dawson testified that the effects of cocaine lasted a short period.

107.    Dr. Dawson also testified that, had Mr. Bodenbach taken 4 mg of Xanax, as he had claimed, Dr. Dawson would have expected him to be unresponsive and sedated. Dr. Dawson did not believe that Mr. Bodenbach had taken the quantity of Xanax that he claimed.

108.    Before trial, Mr. Bodenbach and his family urged trial counsel to get the results of any blood tests taken at the hospital, which they told him would show that he had taken these drugs.

109.    They further asked counsel to consult with a pharmacologist or toxicologist to support Mr. Bodenbach's claims and to rebut Dr. Dawson.

110.    Trial counsel did not follow up on these requests, and Dr. Dawson's testimony was damaging.

111.   In the post-conviction matter, Mr. Bodenbach presented evidence from a toxicologist that a chronic abuser of cocaine, like Mr. Bodenbach, can experience the effects of the drug much longer than a naive user.

112.   The toxicologist further opined that Xanax could have moderated or masked the effects of cocaine.

113.   Trial counsel, acting objectively reasonably, would have retained a toxicologist to investigate and rebut Dr. Dawson's testimony and support Mr. Bodenbach's version that he ingested Xanax and cocaine, which affected his ability to waive rights and recall events.

114.   Had trial counsel done so, he would have discovered that Dr. Dawson made several errors in his testimony, including the application of the "Glasgow Scale" to Mr. Bodenbach's behavior at the hospital. The Glasgow Scale is used instead to determine neurological trauma.

115.   Moreover, a toxicologist would have testified that Mr. Bodenbach's behavior could be explained by the ingestion of these substances, again contrary to Dr. Dawson.

116.   There is no reasonable tactical or strategic reason for failing to consult a toxicologist on such an important issue when so much of the State's expert's testimony was incorrect.

117.     On the other hand, there is a reasonable probability that had such an expert been retained and presented, the outcome would have been different.

118.     First, there is a reasonable probability that Mr. Bodenbach's statements to law enforcement at the hospital would have been suppressed. Had they been suppressed, there would have been no incriminating statements from Mr. Bodenbach introduced at trial.

119.     Second, even if the statements had not been suppressed, there is a reasonable probability that a toxicologist could have undermined Dr. Dawson's testimony in rebuttal at the trial.

120.     In the absence of that defense assistance, the jury was left with the impression that Mr. Bodenbach was generally lying about taking Xanax before the police interview. The natural conclusion is that he would be lying about other aspects of the case as well. Had a toxicologist's testimony been presented, there is a reasonable probability of a different outcome.

121.     If this claim is subject to AEDPA standards, the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). It was also based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2).

122.     The error was not harmless.

## V.

**Mr. Bodenbach was deprived of his Sixth Amendment right to the effective assistance of counsel because his trial counsel failed to develop and present mitigating mental health evidence at sentencing.**

123.    The district court imposed a life sentence with 25 years fixed due in large part to its belief that Mr. Bodenbach's actions were senseless and premeditated.

124.    The district court noted his drug addiction but found that to be an aggravating circumstance.

125.    Defense counsel wholly failed to develop evidence to present to the court that would explain drug abuse as a disease that can be addressed and treated.

126.    As specific to Mr. Bodenbach, there was evidence that when he was clean and sober, he was a good and peaceable person. When he was on drugs, things were out of hand.

127.    The district court ordered a psychological evaluation by Dr. Arnold, who reported to the court. That report was damaging, and the court relied on it to justify its sentence.

128.    The case cried out for a defense mental health expert to review Mr. Bodenbach's history and to offer an opinion that his drug abuse can be treated and, if treated, his threat to society is limited.

129.   A defense attorney, acting reasonably, would investigate and consult with a defense expert, particularly after a court-ordered evaluation was damaging.

130.    Mr. Bodenbach has undiagnosed mental health conditions, including substance use disorder, that a mental health professional would support and offer in mitigation of punishment.

131.   Had counsel reasonably retained and consulted with his own expert, and had he presented that evidence, there is a reasonable probability that the fixed portion of the sentence would have been considerably reduced.

132.   If this claim is subject to AEDPA, If this claim is subject to AEDPA standards, the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). It was also based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2).

133.   The error was not harmless.

## EXHAUSTION OF STATE COURT REMEDIES

134.   Mr. Bodenbach has either fairly presented and properly exhausted all available state court remedies as to the claims presently raised in this petition, or he will be able to establish an exception so that any claim that the Court deems to have been procedurally default may be heard on the merits in this proceeding.

## RELIEF REQUESTED

Petitioner respectfully requests:

1.      That leave to amend be given, if requested;

2.      That discovery be granted, if requested;

3.      That an evidentiary be held to resolve any material issues of fact;

4.      That the Court grant any other interim relief it deems necessary; and

5.      That this Court issue the Writ to Respondent ordering him to release

Adam David Bodenbach from custody if he is not re-tried within a reasonable

time set by the Court.

DATED this 26th day of June, 2023.

/s/Craig H. Durham
Attorney for Petitioner

## VERIFICATION

I declare under penalty of perjury of the laws of the United States that the foreging is true and correct; that Adam Bodenbach has read this petition; that I am a person authorized by Adam Bodenbach to sign on his behalf under 28 U.S.C. § 2244; and that I have done so due to delays within the prison mail system and to ensure compliance with the statute of limitation.

Craig Durham

EXECUTED ON the 26th day of June, 2023.

EXHIBIT A

NO.
A.M. 9:24 FILED PM

NOV 17 2017

CHRISTOPHER D. RICH, Clerk
By KIERSTEN HOUST
DEPUTY

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

THE STATE OF IDAHO,

               Plaintiff,

    -vs-

ADAM DAVID BODENBACH,

DOB: 03/08/1986
SSN: XXX-XX-1634

               Defendant.

Case No. CR01-17-419

**JUDGMENT OF CONVICTION
AND COMMITMENT**

On November 3, 2017, Benjamin Harmer and Whitney Faulkner, Deputy Prosecuting Attorneys for the County of Ada, State of Idaho, and the defendant, Adam David Bodenbach, with his attorney, Douglas Nelson, appeared before this Court for sentencing.

The defendant was duly informed of the Information filed against him, and the defendant was found guilty by a jury on August 29, 2017 to the crimes of COUNT I: MURDER IN THE FIRST DEGREE, FELONY, I.C. § 18-4001, -4002, -4003, COUNT II: USE OF A FIREARM OR DEADLY WEAPON DURING THE COMMISSION OF A CRIME, FELONY, I.C. §19-2520 and COUNT III: POSSESSION OF A CONTROLLED SUBSTANCE, FELONY, I.C. § 37-2732(c), committed on or about January 6, 2017.

JUDGMENT OF CONVICTION AND COMMITMENT - Page 1

000445

The defendant, and defendant's counsel, were then asked if they had any legal cause or reason to offer why judgment and sentence should not be pronounced against the defendant, and if the defendant, or defendant's counsel, wished to offer any evidence or to make a statement on behalf of the defendant, or to present any information to the Court in mitigation of punishment; and the Court, having accepted such statements, and having found no legal cause or reason why judgment and sentence should not be pronounced against the defendant at this time; does render its judgment of conviction as follows, to-wit:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendant is guilty of the crimes of COUNT I: MURDER IN THE FIRST DEGREE, FELONY, I.C. § 18-4001, -4002, -4003, COUNT II: USE OF A FIREARM OR DEADLY WEAPON DURING THE COMMISSION OF A CRIME, FELONY,  I.C. §19-2520 and COUNT III: POSSESSION OF A CONTROLLED  SUBSTANCE, FELONY, I.C. § 37-2732(c), and that he be sentenced as follows:

**Count I:**  As enhanced by the USE OF A FIREARM OR DEADLY WEAPON DURING THE COMMISSION OF A CRIME charge contained in Count II, Defendant is hereby sentenced for an aggregate term of LIFE, to be served as follows:  a minimum period of confinement of twenty-five (25) years, followed by a subsequent indeterminate period of LIFE.

**Count III:** Defendant shall serve an aggregate term of seven (7) years: with the first three (3) years of the term to be FIXED, and with the remaining four (4) years of the term to be INDETERMINATE, with such sentence to commence immediately.

Said sentences shall run concurrently with each other.

000446

Pursuant to I.C. § 18-309, the defendant shall be given credit for the time already served upon the charges specified herein, which is three hundred two (302) days as of the date of sentencing.

The defendant shall submit a DNA sample and right thumbprint impression to authorities pursuant to I.C. § 19-5506 within ten (10) days of this judgment.

Pursuant to I.C. § 31-3201A, the Defendant shall pay court costs in the amount of $17.50, on each count; County Administrative Surcharge Fee in the amount of $10.00, on each count, pursuant to I.C. § 31-4602; P.O.S.T. Academy fees in the amount of $15.00, on each count, pursuant to I.C. § 31-3201B; ISTARS technology fee in the amount of $10.00, on each count, pursuant to I.C. § 31-3201(5); $75.00, on each count, to the Victims Compensation Fund pursuant to I.C. § 72-1025; $3.00, on each count, for the Peace Officer Temporary Disability Fund pursuant to I.C. § 72-1105; $15.00, on each count, victim notification fee pursuant to I.C. § 31-3204; $30.00, on Count III, domestic violence fee pursuant to I.C. § 32-1410; $10.00, on Count III, for the drug hotline fee pursuant to I.C. § 37-2735A; and $100.00, on each count, emergency surcharge fee pursuant to I.C. § 31-3201H, to be paid through the Clerk of the District Court.

IT IS FURTHER ADJUDGED that the defendant be, and hereby is, assessed and ordered to pay a fine in the amount of $25,000.00, payable through the Clerk of the District Court.

Pursuant to I.C. § 19-5307, that the defendant be, and hereby is, assessed and ordered to pay a civil judgment in the amount of $5,000.00.

Pursuant to I.C. § 19-5304, the defendant shall pay restitution in the amount of $1,589.92, bearing interest at the statutory rate of 5.625% per annum until paid in full. The defendant shall pay restitution through the Clerk of the District Court.

The defendant shall be remanded to the custody of the Sheriff of Ada County, to be delivered <u>FORTHWITH</u> by him into the custody of the Director of the State Board of Correction of the State of Idaho.

IT IS FURTHER ORDERED that the Clerk deliver a certified copy of this Judgment and Commitment to the said Sheriff, which shall serve as the commitment of the defendant.

## NOTICE OF RIGHT TO APPEAL

You, Adam David Bodenbach, are hereby notified that you have the right to appeal this order to the Idaho Supreme Court. Any notice of appeal must be filed within forty-two (42) days from the entry of this judgment.

You are further notified that you have the right to be represented by an attorney in any appeal, that if you cannot afford to retain an attorney, one may be appointed at public expense. Further, if you are a needy person, the costs of the appeal may be paid for by the State of Idaho. If you have questions about your appeal rights, you should consult your present lawyer.

IT IS SO ORDERED.

Dated this 16th day of November 2017.

STEVEN J. HIPPLER
District Judge

JUDGMENT OF CONVICTION AND COMMITMENT - Page 4

## CERTIFICATE OF MAILING

I hereby certify that on the __17th__ day of November 2017, I mailed (emailed) a true and correct copy of the within instrument to:

ADA COUNTY PROSECUTOR'S OFFICE
VIA EMAIL

D. DOUGLAS NELSON
ROARK LAW FIRM
515 FIRST AVE SOUTH
HAILEY, ID 83333
EMAIL: inbox@roarklaw.com

ADA COUNTY JAIL
VIA EMAIL

IDAHO DEPARTMENT OF CORRECTION
VIA EMAIL

PSI DEPARTMENT
VIA EMAIL

CHRISTOPHER D. RICH
Clerk of the District Court

By: _____
Deputy Clerk

JUDGMENT OF CONVICTION AND COMMITMENT - Page 5

EXHIBIT B

# IN THE SUPREME COURT OF THE STATE OF IDAHO

| | |
|---|---|
| STATE OF IDAHO, | **Remittitur** |
| Plaintiff-Respondent, | Docket No. 45599-2017 |
| v. | |
| ADAM DAVID BODENBACH, | Ada County District Court<br>CR01-17-00419 |
| Defendant-Appellant. | |

To: Fourth Judicial District, County of Ada.

The Court having announced its Opinion in this cause September 03, 2019, which has now become final; therefore,

IT IS HEREBY ORDERED that the district court shall forthwith comply with the directive of the Opinion, if any action is required.

Dated: September 25, 2019.

_Karel A. Lehrman_
Karel A. Lehrman
Clerk of the Courts

09/25/2019

EXHIBIT C

**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

| | |
|---|---|
| ADAM DAVID BODENBACH, | **Remittitur** |
|    Petitioner-Appellant, | Docket No. 49245-2021 |
| v. | Ada County District Court |
| STATE OF IDAHO, | CV01-20-15107 |
|    Respondent. | |

TO:   Fourth Judicial District, County of Ada

The Court having announced its Unpublished Opinion in this cause November 22, 2022, and the Supreme Court having denied Appellant's Petition for Review on March 27, 2023; therefore;

IT IS ORDERED that the District Court shall forthwith comply with the directive of the Unpublished Opinion, if any action is required.

Dated: March 27, 2023

_____
Melanie Gagnepain
Clerk of the Courts