RAÚL R. LABRADOR
Attorney General
State of Idaho

MARK W. OLSON, ISB #7555
Deputy Attorney General
Capital Litigation Unit
Criminal Law Division
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4539
Facsimile: (208) 854-8074
Email: mark.olson@ag.idaho.gov

Attorneys for Respondent

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ADAM DAVID BODENBACH, | ) | CASE NO. 1:23-cv-00303-CWD |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | BRIEF IN SUPPORT OF |
| | ) | RESPONDENT'S MOTION FOR |
| RANDY VALLEY, | ) | PARTIAL SUMMARY DISMISSAL |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

COMES NOW, Respondent, Randy Valley ("state"), by and through his attorney, Mark W. Olson, Deputy Attorney General, Capital Litigation Unit, and hereby submits this brief in support of the Respondent's Motion for Partial Summary Dismissal of Bodenbach's federal habeas petition.

## BACKGROUND

In its 2022 unpublished opinion affirming the state district court's summary dismissal of Bodenbach's post-conviction petition, the Idaho Court of Appeals set forth the underlying facts and jury trial proceeding as follows:

> In January 2017, Bodenbach shot and killed Ryan Banks. The State charged Bodenbach with first degree murder, the commission of a crime with a firearm, and possession of cocaine. The following evidence was elicited during the jury trial.

> The night began with Bodenbach and a friend, Kimsey, injecting cocaine between 8:00 p.m. and 10:00 p.m. Eventually Banks joined them to hang out. Bodenbach and Kimsey began to argue about Bodenbach borrowing Kimsey's car. The argument escalated with Kimsey pushing Bodenbach; Banks intervened by pushing Bodenbach backwards into Bodenbach's room and pinning him on his bed. Bodenbach testified that Banks' hands were around his throat and choking him. Kimsey pulled Banks off Bodenbach, and Kimsey and Banks walked to Banks' apartment. Kimsey stayed with Banks for a while and then went back to check on Bodenbach. Kimsey found Bodenbach in his room tearing his room apart by flipping the mattress and throwing clothes around while trying to find his handgun. Bodenbach accused Banks of stealing his handgun. Kimsey returned to Banks' apartment, giving Bodenbach time to calm down. Bodenbach eventually found his handgun in his bedroom. Bodenbach testified he was worried Banks may harm Kimsey so he walked to Banks' apartment with his handgun to check on Kimsey.

> Here Kimsey's and Bodenbach's stories diverge. Bodenbach testified he knocked on Banks' door and announced himself as police; Bodenbach announced police because he was concerned how Banks may react. Bodenbach testified his handgun was in his jacket pocket at this time. Kimsey testified he did not hear a knock at the door; instead, Kimsey and Banks began to leave the apartment to smoke when Banks paused at the front door. Kimsey walked through the door and saw Bodenbach pointing his handgun in their direction. Kimsey testified he heard Bodenbach say, "You thought I was fucking kidding. You think I'm a fucking punk."

> Banks said nothing but lunged towards Bodenbach. Bodenbach testified that Banks pulled a knife out of his waistband prior to lunging toward Bodenbach. Banks pushed Bodenbach into a pillar. From his angle, Kimsey could not see the front of Banks or Bodenbach's handgun. Bodenbach claimed Banks had the knife about six inches away from his torso when he pulled his handgun out and pulled the trigger. Bodenbach shot Banks shortly after midnight.

Kimsey testified he did not see a knife on Banks at any time that night. However, during his interview with law enforcement the night of Banks' death, Kimsey reported Banks had been carrying a knife before he was shot.

Immediately after the shooting, Bodenbach went back to his apartment, called 911, and reported he shot someone. Bodenbach placed his handgun on a table in his apartment and then purportedly took four milligrams of Xanax to calm down.

The Boise Police Department responded to the scene. Officers encountered Bodenbach talking on the phone and holding a knife, which he later claimed he found on the ground near where he shot Banks. Bodenbach was arrested and subsequently transported to the hospital due to complaints of neck and back pain. Around 2:00 a.m., Boise Police Detective Pietrzak interviewed Bodenbach at the hospital. Bodenbach later alleged he did not remember being interrogated by Detective Pietrzak.

In response to Bodenbach's testimony that he consumed cocaine and Xanax, the State called expert witness Dr. Gary Dawson. Dr. Dawson consults in pharmacology and the subdiscipline toxicology. Dr. Dawson testified to the effects of cocaine and opined that cocaine provides an instantaneous high that lasts a relatively short period--typically an hour or less with an hour and a half being the maximum. Dr. Dawson then testified about Xanax, dosage, and common effects. Dr. Dawson opined that four milligrams is a huge dose for someone who does not regularly take Xanax and that he would expect to see that person become unresponsive and sedated for possibly twelve to fourteen hours. Based upon his training and experience, and the accounts from eyewitnesses, Dr. Dawson did not believe Bodenbach was under the influence of Xanax after the shooting with a reasonable degree of medical certainty.

The jury found Bodenbach guilty on all counts.

(State's lodging D-5, pp.1-3.)

!

The judgment of conviction for first-degree murder, I.C. §§ 18-4001, 4002, 4003; felony possession of a controlled substance (cocaine), I.C. § 37-2732(c); and the deadly weapon sentencing enhancement, I.C. § 19-2520; was entered on November 17, 2017. (State's lodging A-2, pp.445-449.) The trial court imposed a unified life sentence with 25 years fixed for first-degree murder, and a concurrent unified seven-year sentence with three years fixed for possession of a controlled substance. (Id.)

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL - 3*

On direct appeal, Bodenbach raised three claims: (1) the language of a jury instruction utilized by the trial court providing that Bodenbach was not entitled to claim self-defense if was he the "initial aggressor" was incorrect as a matter of law, and violated his constitutional due process rights by lowering the state's burden of proof; (2) the trial court erred by denying his motion to suppress certain statements he made to law enforcement; and (3) the trial court abused its discretion by imposing an excessive sentence. (State's lodging B-1.) The Idaho Supreme Court retained the case and affirmed the judgment of conviction. (State's lodging B-4.)

The Court first held that Bodenbach failed to preserve his appellate arguments regarding the specific language utilized in the "initial aggressor" jury instruction, and whether the instruction unconstitutionally reduced the state's burden. (State's lodging B-4, pp.5-6.) This was because, the Court explained, Bodenbach objected to the instruction below only on the ground of whether such an instruction was, in general, appropriate under Idaho law. (Id.) Therefore, the Court considered Bodenbach's instructional claim under the Idaho fundamental error standard as then set forth in State v. Perry, 245 P.3d 961 (Idaho 2010). (State's lodging B-4, pp.6-12.)

Applying this standard, the Court held that Bodenbach successfully demonstrated that a portion of the trial court's challenged instruction, that "the circumstances justifying a killing must be such as to render it unavoidable," was unlawful; and that it was clear from the record that defense counsel's failure to object to this portion of the instruction was not tactical – this satisfied the first and second prongs of Perry. (State's lodging B-4, pp.6-11.) However, the Court held that Bodenbach failed to demonstrate that this error affected the outcome of the trial proceedings, as required by the third prong of Perry. (State's lodging B-4, pp.11-12.) Bodenbach therefore failed to satisfy the Perry fundamental standard. (Id.) The Court then held

that Bodenbach failed to demonstrate trial court error with respect to his other two appellate claims. (State's lodging B-4, pp.12-18.)

In September 2020, Bodenbach filed a post-conviction petition. (State's lodging C-3, pp.2-17.) In his petition, Bodenbach alleged his trial counsel was ineffective for: (1) failing to object to the language of the trial counsel's "initial aggressor" jury instruction; (2) failing to request an instruction on "imperfect self-defense," which, if established, Bodenbach asserts, would mitigate murder to voluntary manslaughter where "the defendant acted on an unreasonable but honest belief that self-defense was necessary"; (3) failing to consult with and present the testimony of a toxicologist to rebut the state's toxicologist and to explain the effect certain drugs would have had on him; (4) failing to object to certain specified instances of alleged prosecutorial misconduct during closing argument; (5) providing professionally unreasonable advice about whether to take a plea offer made by the state; and (6) failing to develop mitigating evidence and present it at the sentencing hearing. (State's lodging C-3, pp.5-16.) Bodenbach supported his claims with several exhibits, including an affidavit about his communications with his trial counsel and his counsel's representation in the underlying case; and a declaration from a forensic toxicologist in support of post-conviction Claim 3, in which the forensic toxicologist offered opinions on the trial evidence relevant to that claim. (State's lodging C-3, pp.19-52.) The state district court appointed counsel to represent Bodenbach in the post-conviction proceeding. (State's lodging C-2, pp.16-17.) Appointed counsel did not file an amended post-conviction petition.

After entering a lengthy notice of intent to dismiss which addressed the merits of each of Bodenbach's ineffective assistance of trial counsel claims, in which it concluded that Bodenbach failed to allege facts establishing a genuine issue of material fact with respect to any of these

claims (State's lodging C-2, pp.52-75), the state district court summarily dismissed Bodenbach's petition (State's lodging C-2, pp.79-81).

Bodenbach, through counsel, appealed from the state district court's summary dismissal order.  (State's lodging D-2.)   However, Bodenbach challenged the district court's summary dismissal of only one of his post-conviction claims – that trial counsel was ineffective for failing to retain an expert toxicologist to refute the state's expert testimony.  (Id.)  In an unpublished opinion, the Idaho Court of Appeals affirmed the state district court's summary dismissal of Bodenbach's petition after concluding that the state district court did not err in dismissing the toxicologist claim.  (State's lodging D-5.)   The Idaho Supreme Court denied Bodenbach's petition for review.  (State's lodgings D-8; D-9; D-10.)

In June 2023, Bodenbach, through counsel, filed a habeas petition in federal district court, commencing this proceeding.  (Dkt. 1.)  Bodenbach's petition raises the following five claims: (1) the trial court's "initial aggressor" jury instruction violated his constitutional due process rights by lessening the state's burden of proof; and that trial counsel was ineffective for: (2) failing to object with appropriate specificity to the "initial aggressor" instruction; (3) failing to request a jury instruction on "imperfect self-defense"; (4) failing to consult a toxicologist or pharmacologist to rebut the state's expert testimony; and (5) failing to develop and present mitigating mental health evidence at sentencing.  (Dkt. 1, pp.9-21.)

In its Initial Review Order, this Court ordered the state to file an Answer or Pre-Answer motion.  (Dkt. 8, p.3.)  In its motion for partial summary dismissal and this brief in support of that motion, the state asserts that Claims 2, 3, and 5 in Bodenbach's habeas petition are procedurally defaulted and must be dismissed because Bodenbach failed to fairly present them to

the Idaho Supreme Court, and the time to do so has now expired.   Approximately contemporaneously with this filing, the state lodges relevant state court records.  (Dkt. 10.)

## ARGUMENT

A.      Standard Of Review

Rule 4 of the Rules Governing Section 2254 Cases provides that an answer shall be filed unless it appears from the face of the petition that relief is unavailable.  The rule permits a response other than an answer.  White v. Lewis, 874 F.2d 599, 602 (9th Cir. 1989).  Motions to dismiss in response to petitions for habeas corpus relief are common and accepted.  Id. at 603 (citing Murray v. Carrier, 477 U.S. 478, 483 (1986)).  Rule 4 of the Rules Governing Section 2254 Cases "'explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated.'"   O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (quoting Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983)).

A court may look beyond the complaint to matters of public record and doing so does not convert a motion for summary dismissal into a motion for summary judgment.  Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1281 (9th Cir. 1986).

B.      Claims 2, 3, and 5 in Bodenbach's Habeas Petition Are Procedurally Defaulted And Must Be Dismissed

1.      Legal Framework For Exhaustion

Federal courts are barred from granting habeas relief unless the petitioner exhausts the remedies available in state court.  28 U.S.C. § 2254(b).  The exhaustion requirement "reflects a policy of federal-state comity," Picard v. Connor, 404 U.S. 270, 275 (1971), which requires a petitioner to "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard, 404 U.S. at 275).  Exhaustion requires more

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL -*
*7*

than mere notice; rather, it must "be serious and meaningful." Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992).  The exhaustion requirement is not satisfied unless the claim has been fairly presented to the state's highest court.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

"Fair presentation" requires a petitioner to describe both the operative facts and legal theories upon which the federal claim is premised.  Gray v. Netherland, 518 U.S. 152, 162-163 (1996); Shumway v. Payne, 223 F.3d 982, 987-988 (9th Cir. 2000).  "Fair presentation" means more than a "mere similarity of claims" between the issues raised before the state's highest court and those raised in the federal petition.  Duncan, 513 U.S. at 366; Shumway, 223 F.3d at 988.  As discussed in Gray, 518 U.S. at 163, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Moreover, a petitioner must make more than a cursory reference to the claim before the state court or a "naked reference" to a constitutional provision.  Shumway, 223 F.3d at 987.  Rather, the federal basis of the claim before the state court must be "explicit by citing federal law or the decisions of federal courts even if the federal basis is 'self evident.'"  Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), as amended, 247 F.3d 904 (9th Cir. 2001).  Based upon Duncan, the degree of explicitness is "rigorous."  Id. at 669.

2.    Legal Framework Of State Procedural Bars

A federal habeas petitioner has procedurally defaulted his claim if he could have raised his constitutional claim in state court but failed and is now barred from doing so by a state court rule.  Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir. 1988) (citing Murray, 477 U.S. at 485, and Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)).  If a petitioner fails to seek direct review from a state's highest court, and the time has passed for such review, a procedural default exists even if review was afforded in the state's lower courts.  O'Sullivan, 526 U.S. at 848; Harmon v. Ryan,

959 F.2d 1457, 1461 (9th Cir. 1992).

3.    Claims 2, 3, and 5 From Bodenbach's Federal Habeas Petition Are Procedurally Defaulted

Bodenbach failed to fairly present Claims 2, 3, and 5 to the Idaho Supreme Court; because the time to do so has now expired (*see* I.A.R. 14), these claims are procedurally defaulted and must be dismissed.

Claims 2, 3, and 5 each assert ineffective assistance of trial counsel, specifically, that trial counsel was ineffective for: (2) failing to object with appropriate specificity to the trial court's "initial aggressor" jury instruction; (3) failing to request a jury instruction on "imperfect self-defense"; and (5) failing to develop and present mitigating mental health evidence at sentencing. (Dkt. 1, pp.11-16, 20-21.) As noted above, Bodenbach raised each of these claims in his post-conviction petition, and the state district court addressed the merits of each of these claims in summarily dismissing them. (State's lodgings C-2, pp.58-62, 76; C-3, pp.5-9, 14-16.) However, as also noted above, Bodenbach did not raise any of these three claims in his subsequent post-conviction appeal, and instead raised only a single, different ineffective assistance of trial counsel claim (corresponding with Bodenbach's Habeas Claim 4, his claim that his trial counsel was ineffective for failing to utilize a toxicologist as an expert witness). (*See* State's lodging D-2.) Consequently, the Idaho Court of Appeals considered (and rejected) only this toxicologist claim. (State's lodging D-5.)

Because Bodenbach failed to raise Claims 2, 3, and 5 to any Idaho appellate court, let alone the Idaho Supreme Court, and the time to do so has now expired (*see* I.A.R. 14), these claims are procedurally defaulted and must be dismissed unless Bodenbach can demonstrate cause and prejudice or actual innocence.

4.    To Overcome Dismissal Due To Procedural Default, Bodenbach Must Show Cause And Prejudice Or A Miscarriage Of Justice

When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas relief unless the prisoner shows: (1) a valid cause for the default and actual prejudice resulting from the alleged constitutional violation, or (2) that failure to consider the claims will result in a miscarriage of justice, also known as "actual innocence." Coleman v. Thompson, 501 U.S. 722, 750 (1991); Murray, 477 U.S. at 496; Reed v. Ross, 468 U.S. 1, 16-19 (1984).

a.    General Legal Standards Governing Cause And Prejudice

"Cause" has been described as something external to the petitioner:

[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

Coleman, 501 U.S. at 753 (quoting Murray, 477 U.S. at 488).  A petitioner's illiteracy, *pro se* status and/or mental deficiencies have all been found not to be "external impediments preventing counsel from constructing or raising the claim."  Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 908-09 (9th Cir. 1986); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988).

"Prejudice" requires a petitioner to show more than the possibility of prejudice.  U.S. v. Frady, 456 U.S. 152, 170 (1982).  Rather, the petitioner must establish that any alleged error worked to his substantial disadvantage, infecting the entire trial.  Id.  In Vansickel v. White, 166 F.3d 953, 958 (9th Cir. 1999), the court implied that the prejudice prong of Strickland, 466 U.S. 668, applies to the "prejudice" standard of procedural default.  This standard requires Bodenbach to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  A reasonable probability is a probability sufficient

to undermine confidence in the outcome." Vansickel, 166 F.3d at 958-59 (quoting Strickland, 466 U.S. at 694).

The Ninth Circuit Court of Appeals has concluded that, prior to summary dismissal, a *pro se* petitioner must be given an opportunity to establish cause and prejudice such as to excuse a procedural default. *See* Boyd v. Thompson, 147 F.3d 1124, 1128 (9th Cir. 1998). If, in his response to the Respondent's Motion for Partial Summary Dismissal, Bodenbach fails to establish cause and prejudice excusing his procedural default, his procedurally defaulted claims must be dismissed unless he demonstrates a fundamental miscarriage of justice.

      b.    <u>General Legal Standards Governing Miscarriage Of Justice</u>

Application of the fundamental miscarriage of justice exception "makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass in order to have his otherwise barred constitutional claim considered on the merits." Herrera v. Collins, 506 U.S. 390, 404 (1993). To establish a miscarriage of justice by virtue of actual innocence, a petitioner must demonstrate that, "in light of all the evidence," "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327 and 328 (1995). "Actual innocence" means factual innocence, not mere legal insufficiency. Sawyer v. Whitely, 505 U.S. 333, 339 (1992). If, in his response to the Respondent's Motion for Partial Summary Dismissal, Bodenbach fails to establish a fundamental miscarriage of justice, his procedurally defaulted claims must be dismissed.

      c.    *Martinez v. Ryan* and *Shinn v. Ramirez*

In Martinez v. Ryan, 566 U.S. 1, 4-18 (2012), the United States Supreme Court held that habeas petitioners may attempt to establish cause and prejudice for the procedural default of ineffective assistance of trial counsel claims where: (1) the state trial court did not appoint

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL -*
*11*

counsel in the initial-review collateral proceeding; or (2) appointed collateral proceeding counsel is ineffective in raising, or failing to raise, an ineffective assistance of trial counsel claim.

In Trevino v. Thaler, 569 U.S. 413, 423 (2013), the United Supreme Court described and clarified the Martinez cause and prejudice test as consisting of four necessary prongs: (1) the underlying claim of ineffective assistance of counsel must be a "substantial" claim (determining whether an IAC claim is substantial requires a federal court to examine the claim under Strickland, 466 U.S. 668)); (2) the "cause" for the procedural default consists of there being "no counsel" or "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the ineffective assistance of trial counsel claim could have been brought; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal.

However, in May 2022, in Shinn v. Ramirez, 596 U.S. 366 (2022), the United Supreme Court significantly limited the availability of Martinez as a means by which to overcome procedural default in federal habeas proceedings. In that case, the Court held that "under [28] § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel," including new evidence both to determine whether an underlying claim is "substantial," and "to assess cause and prejudice under *Martinez*," because "a *Martinez* hearing when the prisoner cannot satisfy AEDPA's demanding standards in § 2254(e)(2) would prolong federal habeas proceeding with no purpose," and "a federal habeas court may *never* needlessly prolong a habeas case particularly given the essential need to promote the finality of state convictions," id. at 382-390 (emphasis in original, quotes and citations omitted). The only

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL -
12*

exceptions to this bar to consideration of new evidence are if a claim relies on a new and retroactively applied rule of constitutional law; or when the claim relies on new facts that could not have been previously discovered with due diligence by the petitioner and his or her attorney. 28 U.S.C. § 2254(e)(2)(A); *see also* Ramirez, 596 U.S. at 381-383.

In his habeas petition, Bodenbach does not expressly cite Martinez, or attempt to satisfy the four Martinez prongs as set forth above (*see* Dkt. 1); however, it appears from the petition that Bodenbach may attempt to make such an argument in his response to the state's motion for summary dismissal. The state therefore reserves the right to respond to any specific argument from Bodenbach regarding why Martinez may excuse the procedural defaults of any of his claims. However, the state submits that it is unlikely that Bodenbach can satisfy the Martinez exception, as narrowed by Ramirez, with respect to any of his ineffective assistance of trial counsel claims for several reasons.

*First*, pursuant to Ramirez, Bodenbach is limited to the evidence in the state-court record to attempt demonstrate cause and prejudice, and he did not present sufficient evidence to overcome a summary dismissal motion in state district court. *Second*, Claims 2, 3, and 5 *were* raised in Bodenbach's post-conviction proceeding, but were then not raised by his post-conviction appellate counsel in his post-conviction appeal; they are therefore not subject to the Martinez exception. The Martinez exception expressly does not concern attorney errors in types of proceedings other than the initial collateral proceeding. Martinez, 566 U.S. at 16. Therefore, any alleged ineffectiveness with respect to post-conviction appellate counsel, and counsel's decisions regarding which claims to raise on appeal, cannot satisfy the third prong of Martinez. *See* Dixon v. Yordy, 2017 WL 1097174, *10 (D. Idaho 2017) (unpublished) ("any [habeas] claims that *were* included in the original petition but were not included in the post-conviction

appeal are defaulted as well - likely because of appellate counsel's strategic decision to not include them in the appeal, rather than any fault of the attorney who handled the post-conviction matter in the state district court." (emphasis in original).)  *Third*, it is unlikely Bodenbach will be able to show that the procedurally defaulted ineffective assistance of trial counsel claims in his habeas petition are "substantial," as required by <u>Martinez</u>.  And *Fourth*, it is unlikely Bodenbach will be able to show that his post-conviction counsel's decision to proceed on Bodenbach's *pro se* post-conviction petition constituted deficient performance (as opposed to constituting a strategic decision), in light of the presumption of effective assistance pursuant to <u>Strickland</u>, and the thorough manner in which Bodenbach was able to raise and support his claims in his petition.

## **<u>CONCLUSION</u>**

The state respectfully requests this Court grant the state's motion for partial summary dismissal and to dismiss, with prejudice, Claims 2, 3, and 5 in Bodenbach's Petition for Writ of Habeas Corpus; and to order the state to file an Answer in response to the remaining claims – Claims 1 and 4.

DATED this 5th day of February, 2024.

/s/_____
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL -*
*14*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on or about the 5th day of February, 2024, I caused to be serviced a true and correct copy of the foregoing document by the method indicated below, postage prepaid where applicable, and addressed to the following:

Craig H. Durham                          _____ U.S. Mail
Ferguson Durham, PLLC                     _____ Hand Delivery
223 N. 6th Street, Suite 325         _____ Overnight Mail
Boise, ID  83702                          _____ Facsimile
chd@fergusondurham.com                    __X__ Electronic Court Filing


/s/_____
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

*BRIEF IN SUPPORT OF RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL -*
*15*